NELSON v. BROWN et al., Appellants.

Division Two, July 6, 1897.

1. **Sale of Lands:** ASSUMPTION OF MORTGAGE DEBT: STATUTE OF FRAUDS. Where the contract of sale of real estate is fully executed by the vendor's executing and delivering a deed therefor, an agreement to pay an existing debt against the land, in part or in full payment of the purchase money, is not within the statute of frauds and is not required to be in writing, nor is it an agreement to pay the debt of another, but is a part of the original undertaking, and constitutes a part or all of the consideration of the original purchase, as the case may be.

2. ——: ——: WHEN PRINCIPAL BECOMES SURETY. When a grantee assumes payment of a mortgage debt as a part of the purchase price, the grantee becomes the principal debtor, and the original principal becomes surety; and the mortgagee, after receiving notice of the grantee's assumption, is bound to recognize the conditions of suretyship and to respect the rights of the surety in all his subsequent dealings with them, and the doctrines concerning suretyship must control their dealings.

Nelson v. Brown.

3. ——: ——: ——: EXTINGUISHMENT OF DEBT: SUBROGATION. Payment by a grantee who has assumed the payment of a mortgage debt, extinguishes the debt. The grantee can not be subrogated to the rights of the mortgagee and keep the debt alive for any purpose.

4. ——: ——: ——: EXTENSION OF TIME OF PAYMENT. A valid extension of the time of payment of a mortgage debt to a grantee who has assumed its payment without the consent of the mortgagor, operates to discharge the mortgagor.

5. ——: ——: ——: VENDOR'S SUBROGATION TO MORTGAGEE'S RIGHTS. The vendor who pays the mortgage debt which has been assumed by his or a subsequent grantee, becomes entitled to be subrogated to the rights of the mortgagee, and in equity the mortgaged property becomes a primary fund for the payment of the debt. But such vendor could not sell the mortgaged property until the expiration of the time to which the payment of the notes was validly extended.

6. Notes: EXTENSION: PAYMENT OF INTEREST IN ADVANCE. Payment of interest in advance is a sufficient consideration for the extension of a note to a definite and fixed time.

*Appeal from Jackson Circuit Court.*—HON. EDWARD L. SCARRITT, Judge.

REVERSED AND REMANDED.

*Beebe & Watson* for appellants.

(1) The court erred in excluding evidence offered by defendant to show that John W. Henry, as a part of the consideration for the conveyance from defendant to him, agreed to assume the indebtedness herein sued for. An agreement to assume mortgage as part of the consideration need not be in writing. *Ely v. McNight*, 30 How. Pr. (N. Y.) 97; *Wright v. Bridges*, 99 Ind. 565. (2) The consideration of a deed is open to explanation for the purpose of showing the true consideration. *Allen v. Kennedy*, 91 Mo. 324; *Bowen v. Kurtz*, 37 Iowa, 239. (3) If the deed from Brown to Henry be construed to convey the premises subject to the mortgage only, the mortgage is still the primary

fund for the payment of the debt and Brown stood in the relation of a surety only, and an extension of time of payment of mortgage by the mortgagee without the consent of mortgagor discharges the latter, provided there was a consideration for such extension. *Metz v. Todd*, 36 Mich. 474; *Orrick v. Dunham*, 79 Mo. 174; 1 Story, Equity, sec. 499; 3 Pomeroy's Eq. Jur., sec. 1205, and cases cited; *Jumel v. Jumel*, 7 Paige, 594; *Halsey v. Reed*, 9 Paige, 446; *Ferris v. Crawford*, 2 Denio, 595; *Stebbins v. Hall*, 29 Barb. 524; *Johnson v. Zink*, 51 N. Y. 336; *Baker v. Terrell*, 8 Minn. 195; *Willard v. Worsham*, 76 Va. 392. (4) There was a sufficient consideration to support the promise of Nelson to extend the time of payment of said notes. 1 Chitty on Contracts [11 Ed.], p. 36, note; *King v. Upton*, 4 Greenleaf, 552; *Ellney v. Vanderlyn*, 4 Johns. 237; *Leemaster v. Burkhart*, 2 Bibb. 25, 30; *Hamaker v. Eberly*, 2 Binn. 506; *Glasscock v. Glasscock*, 66 Mo. 631; *Cass Co. v. Oldham*, 75 Mo. 50; *Martin v. Nixon*, 92 Mo. 26; *Calkins v. Chandler*, 36 Mich. 320; *Bank v. Bridges*, 98 N. C. 67.

*R. O. Boggess* for respondent.

(1) A person for whose benefit an express promise is made in a valid contract between others may maintain an action upon it in his own name. *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685; *State ex rel. v. Laclede Gas Light Co.*, 102 Mo. 472; *Ellis v. Harrison*, 104 Mo. 270; *Howsmon v. Trenton Water Co.*, 119 Mo. 304. (2) Henry owed the respondent herein no debt, duty or obligation; consequently there was no implied promise on the part of Baird, Henry's grantee, to pay the debt to appellant. *Heim v. Vogel*, 69 Mo. 529; *Simon v. Brown*, 68 N. Y. 355; *Keller v. Ashford*, 133 U. S. 610. (3) The

record of the several deeds from Brown to Henry, Henry to Baird, etc., mentioned in defendant's answer, did not impart notice to the payee or indorsee of the note in suit. R. S. 1889, sec. 2419; *Hull v. Lyon*, 27 Mo. 570; *Crockett & Risque v. Maguire*, 10 Mo. 34; *Digman v. McCollum*, 47 Mo. 372; *Tydings v. Pitcher*, 82 Mo. 379; *Sensenderfer v. Kemp*, 83 Mo. 531. (4) The extension granted to Mitchell was of the time of the payment of the notes, not of the supposed implied obligation of either Henry or Baird; this was before Mitchell had made or entered into any contract whatever in regard to any of the matters, when he was not in privity of either contract or estate with any of the other parties—a stranger. This extension was procured by Hovey & Brown, Baird's agents, acting in his interest. He accepted the benefits, hence was not discharged thereby from any obligation or duty to any of the parties concerned. Brown is estopped because he (Hovey & Brown) procured the extension. All the authorities seem to require that the agreement for extension, in order to have effect, must be made with the principal debtor (Brown). 2 Daniel, Neg. Inst. [2 Ed.], sec. 1324, p. 306; Parsons on Bills and Notes, sec. 241; Tiedeman on Com. Paper, sec. 424, last clause, p. 706; *West v. Brison*, 99 Mo. 684; *Bank v. Moorman*, 38 Mo. App. 485; *The Aultman & Taylor Co. v. Smith*, 52 Mo. App. 351; *Bank v. Klock*, 58 Mo. App. 335.

BURGESS, J.—This is an action upon three negotiable promissory notes, of the same date, executed by defendant Brown to Charles R. Lockridge, due one, two and three years after date, respectively, and to foreclose Brown's equity of redemption in certain city lots under a deed of trust in the nature of a mortgage made by Brown to one Victor B. Bell, trustee, to secure the payment of said notes, which were all indorsed

in writing, and for a valuable consideration sold and delivered to plaintiff by said Lockridge before maturity in the usual course of business. The petition is in the usual form in such cases. Bell made default.

For defense Brown alleges in his answer that after the execution of said notes he sold and conveyed said lots to one John W. Henry, who in part consideration therefor assumed and agreed to pay said notes; that Henry sold and conveyed said lots to one Frank Baird, who also assumed and agreed to pay said notes; that said Baird sold and conveyed said lots to one Joseph A. Mitchell, who also assumed and agreed to pay said notes; that on the —— day of March, 1891, said Joseph A. Mitchell sold and conveyed said lots to one George J. Mitchell, who also assumed and promised to pay said notes. That by virtue of said conveyances aforesaid and assumptions therein contained, this defendant became a mere surety for the payment of said notes. And that by reason of the several successive transfers and assumptions, said Henry, Baird and Mitchell successively became principal debtors to the plaintiff on said notes, and that appellant by the same means became the surety of said several principal debtors, and that plaintiff for valuable consideration, at the request of said Baird and Mitchell extended the time of the payment of said notes without the knowledge or consent of appellant, by reason whereof he was discharged from liability on said notes.

Plaintiff filed reply to the answer in which he denied all new matter set up therein. The case was tried by the court, a jury being waived. The court at the instance of plaintiff made a finding of facts which is as follows: "On August 15, 1887, Charles R. Lockridge conveyed to Leon T. Brown, the defendant herein, lots 9 and 10, Mariner Place, an addition to Kansas City, Missouri, and on the same day the said

Brown, to secure part of the purchase price of said lots, executed and delivered to said Lockridge a deed of trust covering the said property to secure three notes of $888.89 each, due respectively in one, two and three years after date, bearing interest at the rate of 8 per cent per annum, said interest being payable semiannually, that is, on the 15th day of February and August of each year. Thereafter, on September 6, 1887, the said Brown, the defendant herein, conveyed said property by warranty deed to John W. Henry. The said deed recited that the conveyance was made subject to the aforesaid deed of trust given by Brown to Lockridge, but Henry, the grantee, did not agree to assume or pay the debt therein mentioned. Afterward, on January 6, 1888, the said John W. Henry conveyed said property by warranty deed to Frank Baird, in which deed the said Baird assumed and agreed to pay the mortgage debt, heretofore mentioned in the deed of trust from Brown to Lockridge.

Thereafter, on March 15, 1889, the said Frank Baird conveyed said property by warranty deed to Joseph A. Mitchell, and the said Mitchell also agreed to assume and pay said mortgage debt aforesaid. Shortly after the execution and delivery of the deed of trust from Brown to Lockridge, the said Lockridge sold and transferred the three notes therein mentioned to the plaintiff, George R. Nelson, for the consideration of the face value of said notes and interest thereon up to the day of sale thereof, which was before the first interest payment became due. The said Nelson became, and thereafter was the owner and holder of said notes, and received interest thereon on the 15th day of February, 1888, and the 15th day of August, 1888. On the 15th day of February, 1889, the said Joseph A. Mitchell entered into a contract with the said Baird for the purchase of the property aforesaid,

and upon ascertaining that neither of the three notes mentioned in said deed of trust had been paid, and that the first of said notes was due, and had been due for about six months, and that the interest thereon had not been paid on February 20, 1889, called in company with the agent who was negotiating the sale to him, namely, Mr. Hovey, upon Mr. Nelson, the plaintiff herein, and stated to him that he, Mitchell, was about to purchase the property above mentioned, but that he did not desire to make such purchase unless the notes held by Nelson could be extended for some time; and also said to Mr. Nelson at the time that he expected to purchase the property, and assume the payment of these notes as part of the consideration of such purchase. Nelson replied that he would extend the notes if he, Mitchell, would pay the interest up to February 15, 1889, and thereupon it was agreed between Mitchell and Nelson that Nelson would extend the said three notes until March 15, 1892, and Nelson indorsed on said notes, and each of them, that the same was extended to March 15, 1892. At the time of said agreement, and also at the time of the payment of the interest by Mitchell to Nelson, the interest on all of said notes up to February 15, 1889, was due and payable. At the time of the extension of said notes, the property aforesaid was of sufficient value to have paid off said notes if it had then been sold. It is proper to state that the evidence shows that the defendant Brown, and the agent Hovey, who conducted the negotiations for the sale between Baird and Mitchell, and who was present at the time the arrangement for the extension of the notes was made, were partners at that time, and had been ever since prior to August 15, 1887, and that the negotiations for the sale of the property from Baird to Mitchell was made through their office, but was personally attended to by Mr. Hovey. After

Nelson v. Brown.

Mitchell became the owner of the property, the interest on all of said notes was paid as follows: On February 15, 1890; on August 15, 1890; on February 15, 1891, and on August 15, 1891, after which no interest was paid, and the interest, together with the face of the notes, now remains due and unpaid."

'The court then declared the law to be as follows: "Assuming the position of the defendant to be true, namely, that he, the defendant, was entitled to be subrogated to the mortgage security on the premises conveyed when the sum became due, and to use the mortgage to reimburse himself to the extent of the value of the land mortgaged for the money he thus was liable for to Nelson, and that Nelson could not make a valid extension of the notes beyond the date of their maturity without releasing Brown from any liability thereon, yet it is clear to my mind that the agreement for the extension made in this case is not valid for the reason that there was no consideration therefor. Had Brown, the defendant, paid the notes at their maturity to Nelson and proceeded against the land for the recovery of the amount thus paid, the agreement between Nelson and Mitchell as to the extension of such notes could not have been successfully pleaded in abatement of such action."

Judgment was then rendered in favor of plaintiff for the sum of $3,453.99, being the aggregate amount of the notes and interest, and for foreclosure of the deed of trust as prayed. Defendant appeals.

1. The first assignment of error is, that the court erred in excluding evidence offered by defendant to show that John W. Henry as a part of the consideration for the conveyance of the lots from Brown to him agreed to assume the payment of the notes sued on.

The record shows that while defendant Brown was testifying as a witness in his own behalf in regard to

the purchase of the lots by him from Henry, he was asked by his counsel to state under what circumstances he made the purchase. An objection being made by plaintiff, the court inquired of defendant's counsel, if "he proposed to show that Nelson knew anything about the arrangement," and receiving the reply that "what the facts would show about that he did not know," the proffered testimony was excluded. This same witness was also asked the following question: "I will ask you to state whether or not Mr. Lockridge knew, at the time you made the purchase, and at the time you executed these notes, that you were making this purchase for Judge Henry?" Upon objection by plaintiff this testimony was also excluded.

If at the time of the sale of the lots by Brown to Henry it was agreed between them that, as a part of the consideration of the purchase price, Henry assumed and agreed to pay the notes in suit, the agreement was a valid and binding contract between them. The execution of the deed from Brown to Henry was sufficient to take the contract out of the statute of frauds. Where the contract of sale of real estate is fully executed by the vendor by executing and delivering a deed therefor, an agreement to pay an existing debt against the land, in part or in full payment of the purchase money for the land, is not within the statute of frauds, and is not required to be in writing, nor is it an agreement to pay the debt of another and therefore void if resting in parol, but is an original undertaking, and constitutes a part or all of the purchase money as the case may be. *Ely v. McNight*, 30 How. Pr. Rep. 97; *Wright et al. v. Briggs*, 99 Ind. 563. But even if it was a part of the contract between Brown and Henry, and between all subsequent vendors and vendees by which such vendees respectively assumed and agreed to pay the notes in suit as part consideration for the

purchase price, in order to place Brown in the attitude of surety for the payment of the mortgage debt the holder of the mortgage must have had notice of the assumption of the debt by the vendee or purchaser of the lot; and without an offer upon the part of defendant to show such notice in addition to the fact of the assumption of the mortgage debt by Henry the evidence was properly excluded.

Moreover, the court made a finding of facts in which it is stated that "Henry did not agree to assume or pay the debt" to Lockridge, and counsel for defendant in their brief admit that "the findings of fact are supported by the evidence." "When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for the payment of the debt, but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect, by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them. Payment, therefore, by a grantee who has assumed the entire mortgage debt completely extinguishes the mortgage; he can not be subrogated to the rights of the mortgagee, and keep the mortgage alive for any purpose. While the mort-

gagee may release the mortgagor without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee, without the mortgagor's consent, would operate to discharge the mortgagor. In short, the doctrines concerning suretyship must control the dealings between these three parties. When land is thus conveyed, with an assumption of a mortgage by the grantee contained in the deed, subsequent grantees holding under the conveyance are charged with notice, and the land continues to be the primary fund for payment, as though the fact were recited in their own deeds." 3 Pomeroy's Equity [2 Ed.], sec. 1206.

In such circumstances the vendee becomes personally liable to the mortgagee for the morgage debt, who may maintain a personal action against him for the debt thus assumed. *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685.

The rule seems to be that if the owner of real estate incumbered by a mortgage, sells it and his vendee as part payment of the purchase price assumes the payment of the mortgage debt, the vendee becomes the principal, and the vendor is as to such debt entitled to the same rights and remedies against the vendee, whether legal or equitable, that a surety may have against his principal. *Orrick v. Durham*, 79 Mo. 174; *Fitzgerald v. Barker*, supra; *Heim v. Vogel*, supra; 1 Brandt on Suretyship and Guar., sec. 37. Under such circumstances the vendor upon the payment of the debt becomes entitled to be subrogated to the rights of the mortgagee, and in equity the property becomes, as it were, a primary fund for the payment of the debt. "And any valid agreement by the mortgagee with the grantee of the mortgagor to extend the time of payment made without the consent of the mortgagor discharges the latter. This statement of

the law is supported by the great weight of authority."
*Wayman v. Jones*, 58 Mo. App. 313. In support of
this position the following authorities are cited by the
court. *Bank v. Waterman*, 134 Ill. 461; *Union Mutual
Life Ins. Co. v. Hanford*, 27 Fed. Rep. 588; *Spencer v.
Spencer*, 95 N. Y. 353; *George v. Andrews*, 60 Md. 26;
*Calvo v. Davis*, 73 N. Y. 211; *Fish v. Hayward*, 28
Hun. (N. Y.) 456; *Murray v. Marshall*, 94 N. Y.
611; *Union Mutual Life Ins. Co. v. Hanford*, 143 U. S.
187; *Metz v. Todd*, 36 Mich. 473; *Remsen v. Beekman*,
25 N. Y. 552; *Hurd v. Callahan*, 9 Abb. N. C. (N. Y.)
374; *Jester v. Sterling*, 25 Hun. 344; *Paine v. Jones*,
14 Hun. 577; *King v. Baldwin*, 2 Johns. Ch. 559.

The notes were negotiable promissory notes of
which plaintiff became the owner and holder for a val-
uable consideration before maturity, and his rights as
such holder could not in any way be affected by reason
of any contract or agreement with respect to the as-
sumption of their payment made before he acquired
them and of which he did not have notice at that time,
so that, unless Nelson for a valuable consideration
after he became the holder of the notes extended the
time of their payment by an agreement with Mitchell
without the consent of Brown, he, Brown, was not dis-
charged from liability thereon; otherwise he was.
Upon this question the court found that on the fif-
teenth day of February, 1889, Joseph A. Mitchell having
entered into a contract with the said Baird for the pur-
chase of said lots, and upon ascertaining that neither
of the notes had been paid, and that the first one
was due, and had been due for about six months, and
that the interest thereon had not been paid, called, in
company with the agent who was negotiating the sale
to him, namely Hovey, upon the plaintiff, and stated
to him that Mitchell was about to purchase said prop-
erty, but that he did not desire to make the purchase

unless Nelson would extend the time of the payment of the notes; that he expected to purchase the property, and assume the payment of the notes as part consideration of the purchase price. Nelson replied that he would extend the notes if Mitchell would pay the interest on them up to February 15, 1889, and it was then agreed between Mitchell and Nelson that the notes would be extended until that time, and Nelson indorsed on each of said notes that the same was extended to March 15, 1892, up to which time Mitchell paid the interest. The court also further found that the defendant Brown, and the agent Hovey, who conducted the negotiations for the sale between Baird and Mitchell, and who was present when the arrangement for the extension of the notes was made, were partners at the time, and had been ever since prior to August 15, 1887, and that the negotiations for the sale of the property from Baird to Mitchell was made through their office but was personally attended to by Hovey. The notes were executed August 15, 1887, were due respectively, one, two and three years from date, interest payable semiannually. On February 15, 1889, interest was due on said notes up to that time, and Joseph A. Mitchell having contracted for the lots, in consideration for the extension of said notes until March 15, 1889, and as a part of the purchase price for the lots paid to Nelson the interest then due on the notes, and in advance to March 15, 1892, whereupon Nelson indorsed on said notes and each of them that the same was extended to March 15, 1892. It has been held by this court that the payment of interest in advance is a sufficient consideration for the extension of a note to a definite and fixed time. *Stillwell v. Aaron*, 69 Mo. 539; *St. Joseph Fire and Marine Insurance Company v. Hauck*, 71 Mo. 465.

While it is true that Joseph A. Mitchell had not

consummated his purchase of the lots at the time of the contract with Nelson for the extension of the notes, he did so shortly thereafter, and testified that the amount of interest paid to Nelson was part of the contract price, and this is not disputed. It follows that the agreement for the extension was a valid agreement and as Brown was merely surety, that he, on paying the debt, would be entitled to be subrogated to the rights of the mortgagee or his assignee, but could not sell the lots under the mortgage until the expiration of the time to which the notes were extended. He would stand in the shoes of Nelson and would take the mortgage subject to Nelson's agreement with Mitchell.

In passing upon a similar question in *Murray v. Marshall*, 94 N. Y. 616, it was said: "When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated and never consented to. The value of the land, and so the amount to go in exoneration of the bond, might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation."

Our conclusion is that defendant Brown by reason of the extension of the notes was released from any liability thereon.

From these considerations it follows that the judgment must be reversed and the cause remanded. GANTT, P. J., and SHERWOOD, J. concur.